IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFOSTREAM GROUP, INC., d/b/a SeekingArrangement.com and WhatsYourPrice.com, and LEAD WAY,<br><br>    Plaintiffs,<br><br>  v.<br><br>PAYPAL, INC.,<br><br>    Defendant.                       / | No. C 12-748 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS** |

On May 24, 2012, defendant PayPal, Inc. ("PayPal") filed a motion to dismiss plaintiffs' First Amended Complaint ("FAC"). Plaintiffs filed an opposition on June 27, 2012, and PayPal replied on July 13, 2012. A hearing is scheduled for the motion on August 31, 2012. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument. Having reviewed the parties' papers, and for good cause shown, the Court GRANTS IN PART and DENIES IN PART defendant's motion to dismiss.

**BACKGROUND**

Plaintiffs Lead Wey and InfoStream Group, Inc. ("InfoStream") filed this action against PayPal on January 13, 2012. Plaintiff Wey is the CEO and founder of InfoStream, which owns and operates the websites "SeekingArrangement.com" and "WhatsYourPrice.com" (the "Websites"). FAC ¶ 6. The Websites provide dating services for adult members who pay a fee to use the sites and connect with other members. The Websites "cater to adults looking for a nontraditional dating experience." *Id.* ¶ 22. SeekingArrangement.com facilitates "mutually beneficial relationships" between members who refer

to themselves as either "sugar daddy, sugary mommy or sugar baby users."[1]  *Id.* ¶ 20. WhatsYourPrice.com is a dating website and "marketplace" which "allows members to buy and sell the opportunity of going out on a first date." *Id.* ¶ 21. Both of these sites charge a membership fee. Plaintiffs assert that the Websites strictly prohibit use of the website for "any commercial or illegal use," as well as maintain a strict no-nudity, no-obscenity policy. *Id.* ¶ 22. The Websites' "prohibition of illegal conduct extends to prostitution." *Id.* ¶ 23. The websites promote relationships "among adults of differing economic and experiential backgrounds – they are not escort services." *Id.* The accounts of users who violate this policy are deleted. *Id.*

Defendant PayPal is a business that processes payments and facilitates monetary transfers through the Internet. *Id.* ¶ 11. PayPal provides this service to individuals and businesses in return for a fee. *Id.* Information about users' bank accounts and credit cards is not shared with the recipients of the funds, thus protecting users' data. *Id.* ¶ 12. Plaintiffs term this "Confidential Payment Services," and allege that PayPal has a monopoly on the Confidential Payment Services market. *Id.* ¶ 25.

In order to establish a PayPal account, a user must agree to PayPal's User Agreement, which provides that PayPal may "close, suspend or limit your access to your Account or the PayPal Services" for, among other things, breach of the PayPal Acceptable Use Policy ("AUP"). *Id.* ¶ 15, RJN, Dkt. 30, Exs. A and B, §§ 9.1, 10.4.[2] The AUP, in turn, contains a prohibition against using PayPal for activities

---

[1] The parties do not define these terms in their papers. However, according to Wikipedia, "'Sugar daddy' is a slang term for a man who offers money or gifts to a younger person in return for companionship or sexual favors." *See Wikipedia*, available at http://en.wikipedia.org/wiki/Sugar_daddy, last visited August 23, 2012. The Court deduces that "Sugar Mommy" refers to a woman who offers money or gifts to a younger person for same; and "Sugar Baby" refers to the younger person.

[2] PayPal requests judicial notice of 1) the User Agreement between the parties (RJN, Ex. A); 2) the Acceptable Use Policy ("AUP") (RJN, Ex. B); 3) Screenshots of WhatsYourPrice.Com (RJN, Ex. C); 4) Screenshots of SeekingArrangement.com (RJN, Ex. D); and 5) various online articles and editorials about plaintiffs' websites. On a motion to dismiss, a Court may consider documents not physically attached to the complaint if the documents' authenticity is not contested and the plaintiff's complaint necessarily relies on them. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). The Court finds that this applies to Exs. A and B – the contracts that the complaint and both parties' motions rely on – and GRANTS PayPal's request with respect to them.

Plaintiffs do contest the authenticity of Exs. C and D – the screenshots of plaintiffs' websites – as having been taken long after the termination date relevant to plaintiffs' complaint. Pl.'s Objs. to Evidence at 1-3. Plaintiffs also argue that the factual assertions and opinions in the news articles of Ex. E are not judicially noticeable. Pl.'s Obj. to RJN at 3-4. The Court does not rely on the screenshots or news articles in Exs. C-E because, as discussed below, the issues raised by defendants with respect to

2

that "relate to sales of . . . certain sexually oriented content or services." RJN, Ex. B (AUP), ¶ 2. "Certain sexually oriented content or services" is not further defined.

In 2007, plaintiffs established a PayPal account in order to accept payments for membership subscriptions and upgrades for SeekingArrangement.com. FAC ¶ 41. PayPal subsequently suspended this account for violation of the AUP, citing the "sexual" nature of the website. *Id.* Plaintiffs agreed to stop using the account to process payments for SeekingArrangement.com, and the account was reactivated for use by plaintiffs for other online business ventures. *Id.*

On March 29, 2011, plaintiffs launched WhatsYourPrice.com, and set up another account with PayPal to process payments through this new site. Shortly thereafter, on April 14, 2011, PayPal "permanently suspended" the new account, as well as two other accounts associated with InfoStream, claiming that the account was in violation of the AUP. *Id.* ¶¶ 45-46. PayPal claimed that it terminated the accounts because of the "sexual nature of the dating service provided by [plaintiffs'] Websites." *Id.* ¶ 46. In an April 29, 2011 email to Wey, a PayPal employee stated that the accounts were terminated because "[t]wo of the options for daters to choose from are 'Dating - Casual/Intimate Encounter' & Married Dating/Discreet Affair (meeting for purposes of having sex). This would fall under the adult category." *Id.* ¶ 46. Plaintiffs thereafter "engaged in extensive efforts to resolve the issue with PayPal," but were eventually told that there was no way to bring the Websites into compliance with the AUP because both sites "promote monetary exchange between members and modifying the websites or changing their language would not change the customer base." *Id.* ¶ 51. Plaintiffs allege that after weeks of "stringing plaintiffs along and providing numerous contradictory explanations for the termination, PayPal ultimately refused to reconsider the termination of the accounts." *Id.* ¶ 52.

Plaintiffs allege that PayPal did not, in fact, terminate plaintiffs' accounts because of any violation of the AUP. *Id.* ¶ 53. Plaintiffs allege that "it could not be the case that PayPal terminated Plaintiffs' accounts because of the nature of the services provided" because PayPal continues to provide its services to competing websites that provide "identical services" and have "identical financial possibilities available to their patrons." *Id.* ¶¶ 53-54. Instead, PayPal allegedly terminated plaintiffs'

---

the content of the actual websites are properly addressed in a motion for summary judgment. The Court therefore does not rule on the RJN with respect to those exhibits.

accounts in order to "bestow an unfair competitive advantage on certain dating websites and not others." *Id.* ¶ 65. According to plaintiffs, "PayPal manipulates the downstream markets for its own benefit" by "choosing market winners in downstream markets with the intent to benefit itself by increasing revenue and in maintenance of its market power in the Confidential Payment Services market." *Id.* ¶ 38. Plaintiffs claim that not only has PayPal passively accepted a continued relationship with identical, competing websites – such as Ashley Madison.com and ArrangementFinders.com – but PayPal has actively "pre-approved" these competing sites and found them to be in compliance with the AUP. *Id.* ¶ 64. PayPal's citation to the AUP as a reason to terminate plaintiffs' accounts was merely a "pretext to disguise its real reason for terminating SeekingArrangement.com's account – to economically benefit competitor sites." *Id.* ¶ 41.

On January 13, 2012, plaintiffs filed this lawsuit in Santa Clara Superior Court. PayPal removed based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441. The case was subsequently assigned to this Court. Plaintiff filed an amended complaint on April 24, 2012, asserting various causes of action arising out of PayPal's termination of plaintiffs' accounts. Based on the aforesaid activity, plaintiffs bring claims for violation of the Sherman Act, 15 U.S.C. § 2; breach of contract; breach of the implied covenant of good faith and fair dealing; fraud; and unfair business practices. *See* FAC ¶¶ 68-94.

On May 24, 2012, defendant moved to dismiss each of these claims pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs filed an opposition to this motion on June 27, 2012; PayPal filed a reply on July 13, 2012.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, a district court should grant a motion to dismiss when plaintiffs have not pleaded "enough

4

facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact contained in the complaint. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994). "[W]here the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F. 3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## I.     SHERMAN ACT CLAIM

Plaintiffs allege that PayPal has a monopoly in the "Confidential Payment Services" market, and exercises its monopoly power in that market to injure competition in downstream markets, including the "Specialty Online Dating Services" market in which plaintiffs compete. FAC ¶ 69. According to plaintiffs, PayPal manipulates the downstream market by "choos[ing] market winners in downstream markets with the intent to benefit itself by increasing revenue and in maintenance of its market power in the Confidential Payment Services market." *Id.* ¶ 70. The result of PayPal's activities is that competitors in the downstream market have been driven out, leaving the Specialty Online Dating Services market with fewer choices, diminished pricing competition and inferior products. *Id.* ¶ 73. Plaintiffs also allege that PayPal's "arrangements" with its competitors, AshleyMadison.com and ArrangementSeekers.com, are "concerted refusals to deal" with plaintiffs. *Id.* ¶ 71.

Based on these allegations, plaintiffs bring a cause of action for violation of Section 2 of the Sherman Act ("Section 2"), which penalizes "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States." 15 U.S.C. § 2. To state a monopolization claim under

§ 2 of the Sherman Act, a plaintiff must allege that: (1) the defendant possessed monopoly power in the relevant market; (2) the defendant willfully acquired or maintained that power through exclusionary conduct; and (3) the defendant's conduct caused antitrust injury. *See MetroNet Servs. Corp. v. Qwest Corp.*, 383 F.3d 1124, 1130 (9th Cir. 2004). Similarly, to prevail on a claim of attempted monopolization, a plaintiff must demonstrate: (1) specific intent to control prices or destroy competition; (2) predatory or anti-competitive conduct directed toward accomplishing that purpose; (3) a dangerous probability of success; and (4) causal antitrust injury. *Forsyth v. Humana, Inc., 114 F.3d 1467, 1475* (9th Cir. 1997). Antitrust injury is injury "of the type the antitrust laws were intended to prevent." *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 352 F.3d 367, 371 (9th Cir. 2003). In other words, "a plaintiff must prove that his loss flows from an *anticompetitive* aspect or effect of the defendant's behavior . . . If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal *per se*." *Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1034 (9th Cir. 2001).

Plaintiffs do not allege that PayPal has a monopoly or is attempting to attain a monopoly in the downstream Specialty Dating Online Services market. Rather, plaintiffs describe their claim as "very simple[:] It is a violation of Section 2 of the Sherman Act for Paypal, a monopolist in one market, to exercise its market power to injure downstream markets." Pl.'s Opp. to PayPal's Mot. to Dismiss ("Pl.'s Opp."), Dkt. 34 at 11. In support of this theory, plaintiffs rely extensively on the Second Circuit's opinion in *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 268 (2d Cir. 1979).[3] Plaintiffs argue:

> *Berkey Photo*[] stated the rule of law [regarding Section 2]: "We must determine whether a firm violates § 2 by using its monopoly power in one market to gain a competitive advantage in another, albeit without an attempt to monopolize the second market. We hold, as did the lower court, that it does." This is what InfoStream has alleged here . . . This is the exact type of 'leveraging' that *Berkey Photo* prohibits under Section 2.

*Id*. at 12 (emphasis added).

However, the Ninth Circuit expressly rejected *Berkey Photo* in *Alaska Airlines, Inc. v. United*

---

[3]*Berkey* is a 1979 opinion of the Second Circuit. Although plaintiffs attribute the opinion to the "C.D.N.Y." in their Table of Authorities and brief, and to "the Second District" elsewhere in the brief, this Court references only the Second Circuit opinion found at 603 F.2d 263.

6

*Airlines, Inc.*, 948 F.2d 536 (9th Cir. 1991) ("We now reject *Berkey*'s monopoly leveraging doctrine as an independent theory of liability under Section 2."). In the Ninth Circuit, "a plaintiff cannot establish a violation of Section 2 without proving that the defendant used its monopoly power in one market to obtain, or attempt to attain, a monopoly in the downstream, or leveraged, market." *Id*. at 546-47. The court held that leveraging an upstream monopoly to gain power in a downstream market does not violate Section 2 absent achieving, or attempting to achieve, a monopoly downstream:

> The anticompetitive dangers that implicate the Sherman Act are not present when a monopolist has a lawful monopoly in one market and uses its power to gain a competitive advantage in the second market. By definition, the monopolist has failed to gain, or attempt to gain, a monopoly in the second market. Thus, such activity fails to meet the second element necessary to establish a violation of Section 2. Unless the monopolist uses its power in the first market to acquire and maintain a monopoly in the second market, or to attempt to do so, there is no Section 2 violation.

*Id*. at 548; *see also Garon v. eBay*, 2011 WL 6329089, *4 (N.D.Cal. 2011) (Ware, J.) ("[P]laintiffs cannot state a monopolization claim against defendant based on their exclusion from a market in which defendant is neither alleged to be a monopolist nor a competitor."); *Universal Grading Service v. eBay, Inc.,* 2012 WL 70644, *9 (N.D. Cal. Jan. 9, 2012) (Whyte, J.) (dismissing plaintiff's Section 2 claim that eBay conspired with plaintiff's larger competitors to increase prices of plaintiff's product; "Simply put, in order to be liable for inflicting antitrust injury under Section 2, a defendant must compete in the affected market.").

Plaintiffs do not allege that PayPal has a monopoly in the Specialty Online Dating Services market, nor do they expressly allege that PayPal is attempting to obtain such a monopoly. Plaintiffs do state in their opposition papers that "InfoStream believes that discovery will show that PayPal has not only a pecuniary interest or benefit in the powerful market participants downstream but also potentially an ownership interest in such competitors or an arrangement that, for antitrust purposes, is akin to an ownership interest (i.e., that PayPal was directly, vertically integrated into the downstream market or has exclusive long term contracts with them) that give PayPal a direct stake in InfoStream's downstream market." Pl.'s Opp. at 13. In the interest of reviewing the allegations in a light most favorable to plaintiffs, the Court construes this as an "attempt to monopolize" claim, which remains viable after *Alaska Airlines. See Cost Mgmt. Services, Inc. v. Washington Natural Gas Co.*, 99 F.3d 937, 951 (9th Cir. 1996) ("[T]o the extent that 'monopoly leveraging' is defined as an attempt to use monopoly power

7

in one market to monopolize another market, this theory remains a viable theory under Section 2 . . . We emphasize, however, that under this theory, [plaintiff] must establish each of the elements normally required to prove an attempted monopolization claim under section 2 of the Sherman Act.").

With respect to this theory, as an initial matter, plaintiffs' "belief" that PayPal has an ownership interest in competitors such as AshleyMadison.com and ArrangementSeekers.com raises plausibility concerns under *Iqbal* and *Twombly*. The Rule 8 pleading requirements "prevent parties from filing complaints in order to conduct aimless fishing expeditions in the hope that some helpful evidence might possibly be uncovered." *Dichter-Mad Family Partners, LLP v. U.S.*, 707 F. Supp. 2d 1016 1052 (C.D. Cal. 2010) (*citing Iqbal* and *Twombly*). The Court finds that the complaint does not set forth sufficient facts to raise the specter of PayPal's ownership interest in plaintiffs' competitors "above the speculative level." *Twombly*, 550 U.S. at 555.

Moreover, in order to establish an attempt to monopolize claim, a plaintiff must adequately allege the elements required for attempt to monopolize, including a dangerous probability of success. *See Cost Mgmt Serivices, Inc.*, 99 F.3d at 951; *see also Verizon Communications Inc. v. Trinko*, 540 U.S. 398, 415 n.4 (2004) (in considering whether respondent stated a valid claim under a "monopoly leveraging" theory, the Court held that a "dangerous probability of success" in monopolizing a second market was required.). Plaintiffs have not alleged that PayPal has a dangerous probability of success in establishing a monopoly in the Specialty Online Dating Services market. Nor have plaintiffs alleged that their Specialty Online Dating Services competitors – in which PayPal allegedly has an ownership interest – have a dangerous probability of success in monopolizing that market. Plaintiffs have wholly failed to allege any specific facts with respect to the market power of their competitors, despite the fact that "demonstrating the dangerous probability of monopolization in an attempt case [] requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 459 (1993). Likely because plaintiffs relied on the rejected *Berkey Photo* theory, the complaint does not provide any allegations, plausible or otherwise, that PayPal has a dangerous probability of monopolizing the Specialty Online Dating Services market.

The Court therefore GRANTS PayPal's motion to dismiss the Sherman Act claim. The Court grants leave to amend only insofar as plaintiffs can plausibly allege, consistent with Rule 11, that

8

PayPal has an ownership interest in plaintiffs' competitors, and that because of that ownership interest, PayPal has a dangerous probability of success of achieving a monopoly in the Specialty Online Dating Services market.

## II. BREACH OF CONTRACT

To state a claim for breach of contract, a plaintiff must allege (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to the plaintiff as a result of the breach. *CDF Firefighters v. Malonado*, 158 Cal. App. 4th 1226, 1239 (2008). Here, plaintiffs allege that by terminating plaintiffs' accounts, PayPal was in breach of its contractual duty to provide payment processing services for the Websites in exchange for various fees. FAC ¶ 76. PayPal counters that it terminated the accounts because, pursuant to the terms of the User Agreement and AUP, it had "reason to believe" that plaintiffs were in violation of the AUP's prohibition on engaging in the sale of "certain sexually oriented materials or services." Def.'s MTD at 13. In support of its argument, PayPal points to language on plaintiffs' Websites insinuating sexual themes, a photo showing a man holding hundred dollar bills next to a younger woman, and news articles and editorials describing plaintiffs' Websites as sexual in nature and supportive of prostitution. *Id.*; Def.'s Reply at 1, n.2. For their part, plaintiffs allege that competitor websites providing identical services were "pre-approved" by PayPal, and argue that PayPal's continued provision of payment processing services to these competitors demonstrates that PayPal did not have "reason to believe" plaintiffs' Websites were violative of the AUP. Plaintiffs argue that PayPal's stated reliance on the User Agreement as the reason it terminated plaintiffs' accounts is mere pretext; the real reason it terminated plaintiffs' accounts was to benefit the competitor websites and, by extension, itself.

The Court finds that whether PayPal breached the parties' contract by terminating plaintiffs' accounts is a question best resolved on summary judgment or by a jury. PayPal essentially asks the Court to judicially notice that plaintiffs' websites are promoting transactions involving sexually oriented services. While that may prove to be the case, it is outside the scope of judicial notice. *See* Fed. R. Civ. P. 201; *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). Instead, on a motion to dismiss, a Court must take all of plaintiffs' allegations as true and draw all inferences in their favor.

*Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). PayPal's argument is further complicated by the fact that the AUP prohibits use of PayPal for "activities that relate to sales of . . . *certain* sexually oriented materials or services." RJN, Ex. B ¶ 2 (emphasis added). The AUP does not prohibit activities related to the sale of *all* sexually oriented services. If a contract is capable of more than one reasonable interpretation, it is ambiguous. *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 798 (1998). Plaintiffs argue that the use of the word "certain" in the phrase "certain sexually oriented materials or services" renders the term ambiguous. Both parties rely on extrinsic evidence to apply the contract term in their favor. Plaintiffs point to allegedly "pre-approved," identical competitor websites to support their argument that their own websites did not engage in sales related to "certain sexually oriented services." PayPal argues that plaintiffs' websites are "unique" and points to online articles suggesting plaintiffs' websites traffic in prostitution. Def.'s Reply at 1, n.22. "Under California law, courts may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous." *A Kemp Fisheries, Inc. v. Castle & Cooke, Inc.*, 852 F.2d 493, 496 n.2 (9th Cir. 1988). "The case must proceed beyond the pleadings so that the court may consider the evidence." *Id.* Here, it is clear that extrinsic evidence will be required to determine whether the contract's terms are ambiguous, and, if so, whether those terms apply to plaintiffs' Websites.

PayPal's motion to dismiss the breach of contract claim is DENIED.

### III. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In every contract "there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Locke v. Warner Bros., Inc*., 57 Cal.App.4th 354, 66 Cal.Rptr.2d 921, 925 (1997). "[T]he covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1 (1995). A claim for breach of the covenant has five elements under California law: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff

10

was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 968 (N.D.Cal.2010).

Plaintiffs allege that PayPal breached the implied covenant by terminating plaintiffs' accounts, without reason to believe they were engaged in activities prohibited by the AUP, in order to provide an economic advantage to plaintiffs' competitors. FAC ¶¶ 82 and 83. PayPal argues that 1) this claim is superfluous because it is based on the same allegations as the breach of contract claim, and 2) that the contract had no "reasonanability requirement" because PayPal could, "at its sole discretion," terminate an account "for any reason and at any time." Def.'s MTD at 16 (*citing* User Agreement § 10.4).

With respect to the first argument, PayPal cites the proposition that "if the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Malcolm v. JP Morgan Chase Bank, J.A.*, 2010 WL 934252, *6 (N.D. Cal. Mar. 15, 2010) (Fogel, J.) (*citing Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1395 (Cal.Ct.App.1990)). However, the Court disagrees that plaintiffs' implied covenant claim is superfluous. While the breach of contract claim is focused on PayPal's termination of plaintiffs' account without reason to believe it violated the AUP, the implied covenant claim is focused on PayPal's alleged acts to "provide an economic advantage to Plaintiffs' competitors." FAC ¶ 83. Throughout the FAC, plaintiffs allege that PayPal has a "direct or indirect financial arrangement or ownership interest" in their competitors and terminated the contract to provide the competitors with marketplace advantage. *Id.* ¶¶ 50, 63-64. This claim is sufficiently distinct from the breach of contract claim to concurrently maintain the cause of action of breach of the implied covenant.

PayPal's second argument is essentially that there was no implied covenant of good faith and fair dealing in the parties' agreement, because the contract allowed PayPal "in its sole discretion . . . to terminate this Agreement, access to its website, or access to the PayPal services for any reason and at any time . . ." RJN Ex. A (User Agreement) § 10.4. Notably, PayPal does not rely on this "catchall" provision as the grounds on which it terminated plaintiffs' accounts, perhaps out of concern that courts – outside of the at-will employment context – disfavor such provisions as rendering the parties'

11

obligations illusory. *See Mattei v. Hopper*, 51 Cal. 2d 119, 120 (1958) ("[I]f one of the promises leaves a party free to perform or to withdraw from the agreement at his own unrestricted pleasure, the promise is deemed illusory and it provides no consideration."); *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995) (contract's term that it could market Tom Waits records "at its election" is a "textbook example of illusory promise."). In order to save such contract terms, courts will read in the implied covenant of good faith and fair dealing. *See Reyes v. Wells Fargo Bank, N.A.*, 2011 WL 30759 (N.D. Cal. Jan. 3, 2011) (Spero, M.J.) (contract's term that Wells Fargo could terminate a forbearance agreement at its sole discretion at any time would be illusory unless the Court "implies a covenant of good faith and fair dealing into it.") (*citing Storek & Storek v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44 (2002)); *see also Locke v. Warner Bros, Inc.*, 57 Cal. App. 4th 354, at 376 (1997) (where contract allowed film studio discretion to develop the plaintiff's projects, the "implied covenant of good faith and fair dealing obligated Warner Brothers to exercise that discretion honestly and in good faith."). Here, while the contract allowed PayPal to act at its sole discretion, that discretion must be exercised in good faith. *Id.; see also Carma Developers, Inc. v. Marathon Development of California, Inc.*, 2 Cal. 4th 342, 372 (1992) ("The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith."). Plaintiffs allege that PayPal acted in bad faith by terminating the agreement for the sole purpose of benefitting plaintiffs' competitors. FAC ¶¶ 82 and 83. Whether or not that turns out to be the case, it is sufficiently alleged to survive a motion to dismiss.

PayPal's motion to dismiss the claim for breach of the implied covenant of good faith and fair dealing is DENIED.

**IV. FRAUD**

The elements which must be pleaded to sufficiently allege a fraud claim are "(a) misrepresentation (false representation, concealment or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Philipson & Simon v. Gulsvig*, 64 Cal. Rptr. 3d 504, 516 (2007) (quoting *Agricultural Ins. Co. v. Superior Court*, 82 Cal. Rptr. 2d 594, 603 (1999)). "In a fraud claim against a corporation," as

here, "a plaintiff must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written." *Perlas v. GMAC Mortg., LLC*, 113 Cal. Rptr. 3d 790, 794-95 (2010) (citing *Lazar v. Superior Court* 12 Cal.4th 631, 645 (1996)). Additionally, fraud actions are subject to a stricter pleading standard in California. Allegations of "fraud must be specifically pleaded," and "the policy of liberal construction of pleading will not usually be invoked to sustain a pleading that is defective." *Wilhelm v. Pray, Price, Williams & Russell*, 231 Cal. Rptr. 355, 358 (Ct. App. 1986) ("every element of the cause of action for fraud must be alleged in full, factually and specifically"). "This particularity requirement necessitates pleading *facts* which show how, when, where, to whom, and by what means the representations were tendered." *Lazar v. Superior Court*, 909 P.2d 981, 989 (1996) (quoting *Stansfield v. Starkey*, 269 Cal. Rptr. 337, 345 (Ct. App. 1990)).

Plaintiffs base their fraud claim on allegations that PayPal "made a number of misrepresentations to plaintiff concerning both the reasons for the termination of Plaintiffs' PayPal accounts and Defendant's willingness to work with Plaintiff to resolve the supposed violations of PayPal's Acceptable Use policy so that Plaintiff could maintain a PayPal account." FAC ¶ 85. Plaintiffs claim that "a number of different PayPal employees and representatives [falsely] indicated that the alleged violations of its policies could be resolved such that Plaintiff could continue to hold a PayPal account . . . Despite the statements of its representatives, PayPal had no intention of resolving its issues or allowing Plaintiffs to maintain PayPal accounts under any circumstances." *Id.* These statements allegedly caused plaintiffs to "a) continue to use PayPal during the period when PayPal representatives pretended to attempt to 'resolve' the suspension of Plaintiffs' accounts; b) prevent and discourage Plaintiff[s] from contesting or initiating litigation or other adjudicative process regarding the termination of Plaintiffs' accounts; and c) conceal the real reasons for Defendant's termination of Plaintiff's account and Defendant's true economic relationship with the Competitor websites." *Id.* ¶ 86. Plaintiffs allege that this caused them damages in the amount of "no less than $20,000." *Id.* ¶ 87.

These allegations reference the period described in the complaint beginning on April 14, 2011, when PayPal "permanently suspended" all of InfoStreams' PayPal accounts. *Id.* ¶ 45. Over the following four weeks – until May 10, 2011 – plaintiffs engaged in a number of communications with

PayPal representatives. FAC ¶¶ 46-52. On May 3, 2011, PayPal representative Jule Bainbridge stated that Plaintiffs' websites violated the AUP, noting the websites' options of "Adult Dating - Casual/Intimate Encounter" and "Married Dating/Discreet Affair (meeting for the purpose of having sex)." *Id.* ¶ 49.[4] She also explained that other dating sites accepting PayPal had been pre-approved by PayPal. FAC ¶ 64. On May 9, 2011, Program Manager Ashley Bates spoke on the telephone with plaintiff Wey and stated "that she would have a PayPal sales person contact Wey to approve him for a merchant account and would work on un-suspending his other actions." *Id.* ¶ 48. One day later, "[o]n May 10, 2011, Bates emailed Wey to inform him that PayPal would not be able to continue processing payments for the Dating Websites." *Id.* ¶ 49. On a telephone call that same day, Bates explained that "there was no possible way that Wey could modify the Dating Websites to bring them into compliance with the [AUP], because both sites promote monetary exchange between members and modifying the website or changing its language would not change the customer base." *Id.* ¶ 51. Plaintiffs refer to these communications as "weeks of stringing plaintiffs along." *Id.* ¶ 52.

The Court finds that these allegations fail to state a claim for fraud. Plaintiffs claim that they relied on these communications to their detriment by "continu[ing] to use PayPal during the period when PayPal representatives pretended to attempt to 'resolve' the suspension of Plaintiffs' accounts." *Id.* ¶ 86. This statement is directly contradicted by plaintiffs' allegation that on April 14, 2011, prior to the alleged communications with PayPal, PayPal "permanently suspended" plaintiffs' accounts. *Id.* ¶ 45. It is therefore unclear how plaintiffs could have continued to use PayPal during the period they were in communication with PayPal representatives. Moreover, even if plaintiffs did continue to use PayPal, it is unclear how that would be to their detriment, as plaintiffs' principal complaint in this case is that they are no longer allowed to use PayPal. FAC ¶ 5 ("PayPal's refusal to provide services for certain dating websites drives an extremely large number of consumers away from [plaintiffs'] Dating Websites

---

[4] Only the statements from named employees meet the California pleading requirements for fraud claims against corporations. *See Perlas*, 113 Cal. Rptr. 3d at 794-95 ("In a fraud claim against a corporation, a plaintiff must allege the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written."). The general allegation that "a number of different PayPal employees and representatives indicated that the alleged violations of its policies could be resolved such that Plaintiff could continue to hold a PayPal account" does not meet this standard. *Id.*

14

. . ."). Plaintiffs' claim therefore fails to show either reliance or resulting damage.

Plaintiffs' second alleged basis for harm – that PayPal's representations "prevent[ed] and discourage[d]" them from "contesting or initiating litigation or other adjudicative process regarding the termination of Plaintiffs' accounts" – is likewise unactionable.[5] There are no allegations that PayPal made any mention of adjudicative processes or stood in the way of plaintiffs' filing this or any other lawsuit. *See Serv. by Medallion, Inc. v. Clorox Co.*, 52 Cal. Rptr. 2d 650, 656 (Cal. Ct. App. 1996) ("Whatever form it takes, the injury or damage must not only be distinctly alleged but its causal connection with the reliance on the representations must be shown."). If the claim is based on a delay caused by the statements, the delay was a maximum of one month. Plaintiffs allege that their accounts were suspended April 14th, they were told on May 9th that they would be contacted about a merchant account, but were told on May 10th that they could not modify their account to be in compliance with the AUP. FAC ¶¶ 48, 51. The delay caused by this statement appears to be a single day, but even assuming it was four weeks, this fails to state a claim for harm without additional allegations as to why a four week delay in bringing suit negatively affected plaintiffs. *See Medallion,* 52 Cal. Rptr. 2d at 656 ("A false representation which cannot possibly affect the intrinsic merits of a business transaction must necessarily be immaterial because reliance upon it could not produce injury in a legal sense."). Indeed, plaintiffs did not file the instant action until January 13, 2012, a full eight months after the alleged misrepresentations. Plaintiffs have therefore failed to state an actionable claim of reliance or harm.

PayPal's motion to dismiss plaintiffs' cause of action for fraud is GRANTED. Plaintiffs are given LEAVE TO AMEND a plausible claim for fraud that sets forth justifiable reliance and actual damage.

**V.    UCL**

In order to bring a claim for violation of California unfair competition law, California Business

---

[5] Plaintiffs' third basis for harm, that defendant "conceal[ed] the real reasons for [d]efendant's termination of [p]laintiff's account and [d]efendant's true economic relationship with the Competitor websites," FAC ¶ 86, is not a statement of reliance or harm.

15

and Professions Code § 17200, et seq., "a plaintiff must show either an (1) 'unlawful, unfair, or fraudulent business act or practice,' or (2) 'unfair, deceptive, untrue or misleading advertising.'" *See Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir.2004) (quoting Cal. Bus. & Prof. Code § 17200). In order to establish standing under the UCL, a person must have "suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code §§ 17204 & 17535. The UCL provides only for equitable remedies: prevailing plaintiffs are generally limited to injunctive relief and restitution. *People ex rel. City of Santa Monica v. Gabriel*, 186 Cal. App. 4th 882, 889 (2010) (*citing Hedge v. Superior Court*, 145 Cal. App. 4th 278, 284 (2006)).

PayPal argues that plaintiffs have failed to sufficiently allege an injury in fact sufficient to confer standing under the UCL, and that plaintiffs have failed to state a claim under any of the three prongs of the UCL. The Court disagrees on both counts. With respect to standing, plaintiffs allege that "PayPal's refusal to provide services for certain dating websites drives an extremely large number of consumers away from [plaintiffs'] Dating Websites to use PayPal to purchase accounts with its competitors that are PayPal's preferred specialty online dating vendors . . ." FAC ¶ 5. In other words, PAYPAL' alleged breach of contract has led to a loss of business. This is sufficient to establish standing at this stage. *See* § 17204; *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1375 (2012) ("[At the pleading stage, a plaintiff asserting a UCL [] claim satisfies its burden of demonstrating standing by alleging an economic injury.").

With respect to the merits of plaintiffs' UCL claim, the term "fraudulent" as used in Section 17200 "does not refer to the common law tort of fraud but only requires a showing members of the public are likely to be deceived." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 839 (1994). Here, plaintiffs allege that "PayPal has concealed from the public the fact that certain unpublished standards and anticompetitive standards exist that determine whether PayPal will provide services to the public. In reality, however, PayPal uses the policy to pick winners and losers in the market, which it has not disclosed." Def.'s Opp. at 21 (*citing* FAC ¶¶ 5, 91-92). While the Court found that plaintiffs failed to sufficiently allege a claim for common law fraud, the Court finds that this sufficiently states a claim under the fraudulent prong of the UCL. *See Boschma v. Home Loan Center, Inc.*, 198 Cal. App. 4th 230, 252-53 (2011) ("A common law fraudulent deception must be actually false, known to be false by

16

1 the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are
2 required to state a claim for relief under the UCL.").

Because the Court finds that plaintiffs have stated a claim under the fraudulent prong of the UCL, it need not discuss the merits of plaintiffs' "unlawful" or "unfair" conduct allegations against PayPal at this stage. *See Somerville v. Stryker Orthopaedics*, 2009 WL 2901591, *3 (N.D. Cal. 2009) (noting that because the prongs of the UCL are "conjunctive," it need not address the rest of plaintiffs' UCL claims once it found the "unlawful" conduct sufficiently alleged).

The Court therefore DENIES PayPal's motion to dismiss the UCL claim.

## VI. STATUTE OF LIMITATIONS

PayPal argues that all claims based on termination of service to SeekingArrangement.com are barred by the applicable statute of limitations. As described above, plaintiffs established a PayPal account in order to accept payments for membership and upgrades for SeekingArrangement.com in 2007. FAC ¶ 41. Later in 2007, PayPal suspended the account for violation of the AUP, citing the "sexual" nature of the website. *Id.* Plaintiffs filed the instant lawsuit in January 2012. PayPal argues that any claims arising from the suspension of the account related to SeekingArrangement.com are barred by California's four year statute of limitations for breach of contract and UCL claims, and three year statute of limitations for fraud claims, respectively. Def.'s MTD at 24-25.

Plaintiffs argue that their claims related to SeekingArrangement.com are not barred because they did not discover PayPal's "real motivation for its termination of InfoStream's accounts" – to benefit plaintiffs' competitors – until 2011. Def.'s Opp. at 22. Under California law, "a cause of action under the discovery rule accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action." *William L. Lyon & Associates, Inc. v. Superior Court*, 204 Cal. App. 4th 1294, 1308 (2012). Plaintiffs focus on the date they were told that PayPal "pre-approved" their competitors' websites as the date they discovered that PayPal was "selectively and pretextually applying the AUP to manipulated the market for specialty dating services." *Id.*

The Court agrees that pursuant to California's discovery rule, the statute of limitations related to the termination of plaintiffs' first PayPal account in 2007 did not accrue until the conversations

17

plaintiffs had with PayPal respect to the second termination in 2011. The conduct plaintiffs complain of is the hidden motivation behind PayPal's application of the AUP; due to the inherently secretive nature of PayPal's conduct underlying plaintiffs' theory, it is reasonable that plaintiffs could not have discovered PayPal's "motivations" until plaintiffs were explicitly informed of PayPal's "pre-approval" of identical competitor websites.

PayPal's motion to dismiss claims related to SeekingArrangement.com as barred by the applicable statute of limitations is DENIED.

## CONCLUSION

PayPal's motion to dismiss plaintiffs' Sherman Act and Fraud claims is GRANTED. Plaintiffs are granted LEAVE TO AMEND both claims pursuant to the Court's instructions above. Any amended complaint must be filed by **September 7, 2012**. PayPal's motion to dismiss plaintiffs' breach of contract, breach of the implied covenant of good faith and fair dealing, and UCL claim is DENIED. PayPal's motion to dismiss plaintiffs' claims related to SeekingArrangement.com as barred by the applicable statute of limitations is DENIED.

**IT IS SO ORDERED.**

Dated: August 28, 2012

SUSAN ILLSTON
United States District Judge